UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCHOOL BOARD OF LEE COUNTY, FLORIDA,

        Plaintiff,

vs.                                                  Case No. 2:05-cv-5-FtM-29SPC

M.M *on behalf of M.M. II, a minor;*
J.M. *on behalf of M.M. II, a minor,*

        Defendants.
_____

M.M *and* J.M. *on behalf of M.M. II,
a minor,*

        Plaintiffs,

vs.                                                    Case No. 2:05-cv-7-FtM-29SPC

SCHOOL BOARD OF LEE COUNTY, FLORIDA,
and VIVIAN POSEY, an individual,

        Defendants.
_____

**OPINION AND ORDER**

     This cause came before the Court on a Report and Recommendation (Doc. #38)[1] by Magistrate Judge Sheri Polster Chappell. M.M., J.M., and M.M. II filed Objections to Magistrate's Report and Recommendation (Doc. #42), a Notice of Supplemental Authority (Doc.

---

    [1]The Court will utilize the document numbers in the lower-numbered case.

#55) and a Motion for Oral Argument (Doc. #52).  The School Board filed a Response (Doc. #51) to the Objections.

These cases are brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* (IDEA).  Both the School Board and the Parents and Student[2] filed a federal lawsuit from the Final Order after a due process hearing held by the state administrative law judge.  The Report and Recommendation recommends that the Court reverse the Final Order and dismiss the Parents' and Student's lawsuit as moot.

## I.  IDEA Overview

The purpose of the IDEA has been variously stated.  "Congress enacted the IDEA primarily to make public education available to handicapped children and to make such access meaningful."  Donald B., by & Through Christine B. v. Bd. of Sch. Comm'rs of Mobile County, 117 F.3d 1371, 1373 (11th Cir. 1997).  "The stated purpose of the IDEA is to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  Walker County Sch. Dist. v. Bennett, 203 F.3d 1293, 1294 (11th Cir. 2000).  "The fundamental objective of the IDEA is to empower disabled children to reach their fullest potential by providing a free education tailored to meet their individual needs."

---

[2]Because there are two cases, the Court will refer to the Board, the Parents, and the Student instead of plaintiffs and defendants.

Cory D., by & Through Diane D. v. Burke County Sch. Dist., 285 F.3d 1294, 1298 (11th Cir. 2002).

The statutory framework contained in the IDEA[3] to accomplish its objectives has been set forth in several Eleventh Circuit cases, and can be summarized as follows: The IDEA creates a federal grant program to assist state and local agencies in educating disabled children. To receive funds under IDEA, states must provide disabled children with the opportunity to receive a "free appropriate public education" (FAPE) by offering each student special education and related services under an individualized education program (IEP). In addition to this substantive component, the IDEA requires States to establish, and abide by, certain procedural measures with respect to each IEP. Among the procedural measures are the requirements that the school and parents develop the IEP together and that it be reviewed at least annually. If parents of a disabled child disagree with their local educational agency regarding the appropriateness of the child's current IEP, and informal review procedures have failed, the parents have the right to resolve the matter in an impartial due process hearing. Under Florida law, the due process hearing is conducted by an administrative law judge (ALJ) from the Division of Administrative Hearings (DOAH) of the Florida Department of Management Services. Following this final administrative

---

[3]The IDEA was amended effective July 1, 2005. Both sides agree that because the matters at issue in this case arose prior to the effective date, the 1997 version of IDEA is controlling.

determination, the parents and the educational agency retain the right to challenge the decision through a civil action brought in either state or federal court. See CP v. Leon County Sch. Bd., 466 F.3d 1318, 1319-20 (11th Cir. 2006); M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006); M.M. v. Sch. Bd., 437 F.3d 1085, 1094-97 (11th Cir. 2006); Ortega v. Bibb County Sch. Dist., 397 F.3d 1321, 1324-25 (11th Cir. 2006); Cory D., 285 F.3d at 1295-96; School Bd. v. K.C., 285 F.3d 977, 979 (11th Cir. 2002); Bennett, 203 F.3d at 1294.

## II.  Court's Jurisdiction

The School Board argued to the magistrate judge that the Court lacked jurisdiction because the case was moot and therefore the "case or controversy" requirement is not satisfied.  While the School Board did not object to the Report and Recommendation's rejection of this argument, the Court reviews the jurisdictional issue *de novo*.

The School Board argued that the case was moot because both it and the Parents and Student agree that the February 2003 IEP and the February 2004 IEP are not satisfactory to the Student's educational needs as they stand today.  While recognizing the correctness of the underlying facts, the Report and Recommendation found the case was not moot because of the "capable of repetition yet evading review" exception.  (Doc. #38, pp. 15-16.)  The Court fully agrees.  It is the nature of the education of children with a disability that a

given IEP may be valid and effective when promulgated and inappropriate shortly thereafter because of changing circumstances involving the child. It has been recognized that IDEA proceedings "may prove 'long and tedious,'" CP, 466 F.3d at 1323, thus potentially rendering most educational disputes moot. The case and controversy requirement is clearly satisfied where, as here, the child is still involved with the same school board, the same teachers, and the same authorities at the assigned school, and the same school board will be responsible for appropriate IEPs for the foreseeable future. Accordingly, the Court agrees with the Report and Recommendation that the court has jurisdiction.

### III. Objections to Report and Recommendation

The Parents and Student have filed 52 pages of objections to the Report and Recommendation. The Court will address each.

### A. Standard of Review

The Court utilizes a *de novo* standard to review matters of law and matters in a Report and Recommendation to which objections have been filed. 28 U.S.C. § 636(b)(1). The Eleventh Circuit outlined the IDEA and the respective roles of the ALJ and the district court in M.M., 437 F.3d at 1096-98. To the extent the Objections (Doc. #42, pp. 2-3) suggest a standard of review contrary to these principles, it is overruled.

**B.   Credibility Findings**

The Parents and Student argue that a court should not enter an order inconsistent with the ALJ's credibility findings without personally hearing live testimony from important witnesses (Doc. #46, p. 3).  This is contrary to the law in the Eleventh Circuit. A federal action challenging the ALJ's final decision "is an independent civil action and not merely a review of a state administrative decision, . . ."  M.M., 437 F.3d at 1097.  "[T]he district court judge conducts an entirely *de novo* review of the ALJ's findings and has discretion to determine the level of deference it will give to the ALJ's findings."  CP, 466 F.3d at 1323 n.5.  Nothing prevents a district court from factfinding under Fed. R. Civ. P. 52 in an IDEA case.  M.T.V., 446 F.3d at 1156. Nonetheless, "the administrative decision in an IDEA case is entitled to due weight and the court must be careful not to substitute its judgment for that of the state educational authorities.  Still, . . . the extent of the deference to be given to the administrative decision is left to the sound discretion of the district court which must consider the administrative findings but is free to accept or reject them."  Bennett, 203 F.3d at 1297-98.  See also M.M., 437 F.3d at 1097.  "To that end, administrative factfindings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why."  M.M., 437 F.3d at 1097 (quoting Loren F. v. Atlanta Indep.

6

Sch. Sys., 349 F.3d 1309, 1314 n.5 (11th Cir. 2003).  The Objections are overruled to the extent it asserts legal principles to the contrary.

### C. Burden of Proof

The Parents and Student agree with the Report and Recommendation that the burden of proof is generally on the party who is objecting to an existing or proposed IEP.  (Doc. #38, p. 15; Doc. #42, p. 3.)  Schaffer v. Weast, 126 S. Ct. 528, 537 (2005); Devine v. Indian River County Sch. Bd., 249 F.3d 1289, 1292 (11th Cir. 2001), cert. denied, 537 U.S. 815 (2002).  In this case, the burden of proof is upon the Parents and Students.

### D. FAPE Standard

While the federal and Florida FAPE standard was identical prior to November, 1998, the Parents argue that a Florida Constitutional amendment adopted a higher standard which calls upon a School District to maximize a child's potential and provide greater services.  In light of this higher standard, the Parents argue, reliance on prior case law is not appropriate.  (Doc. #42, pp. 4-7.)

Under federal law a two-part test is utilized to determine whether a FAPE was provided under the IDEA.  The court must determine: (1) whether the state actor has complied with the procedures set forth in the IDEA, and (2) whether the IEP developed pursuant to the IDEA was reasonably calculated to enable the child

to receive educational benefit, i.e., be provided with a FAPE. <u>Bd. of Educ. v. Rowley</u>, 458 U.S. 176, 206-07 (1982); <u>M.M.</u>, 437 F.3d at 1097; <u>School Bd. v. K.C.</u>, 285 F.3d at 982; <u>Weiss by & Through Weiss v. School Bd.</u>, 141 F.3d 990, 994 (11th Cir. 1998). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." <u>Todd D. v. Andrews</u>, 933 F.2d 1576, 1580 (11th Cir. 1991)(citing <u>Rowley</u>, 458 U.S. at 206-07). <u>See</u> <u>also</u> <u>M.M.</u>, 437 F.3d at 1097 ("A 'yes' answer to both questions ends judicial review." (citation omitted.)

Under the United States Supreme Court's <u>Rowley</u> standard, a child must be provided "a basic floor of opportunity" that affords "some" educational benefit, but the outcome need not maximize the child's education. <u>Bennett</u>, 203 F.3d at 1296 n.10. The "student is only entitled to some educational benefit; the benefit need not be maximized to be adequate." <u>Devine</u>, 249 F.3d at 1292. <u>See also</u> <u>JSK v. Hendry County Sch. Bd.</u>, 941 F.2d 1563, 1572-73 (11th Cir. 1991).

The Parents and Student argue that this well-established law was changed by Article IX, Section 1 of the Florida Constitution, as amended effective November 3, 1998, which provides:

> The education of children is a fundamental value of the people of the State of Florida. It is, therefore, a paramount duty of the state to make adequate provision for the education of all children residing within its borders. Adequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools that allows students to obtain a high quality education and for the establishment, maintenance and operation of institutions of higher

8

>    learning and other public education programs that the
>    needs of the people may require.

The references to "high quality education," they argue, elevates the substantive component of the FAPE for Florida children. The Parents and Student also argue that the existence of a gifted child program and the "No Child Left Behind Act" establish a higher state standard which requires that a child's potential be maximized. (Doc. #42, pp. 4-7.) The Court disagrees.

In evaluating whether a higher standard is applicable, courts have looked to whether the state expressed an intent to override the federal standard. <u>Gill v. Columbia 93 Sch. Dist.</u>, 217 F.3d 1027, 1036 (8th Cir. 2000). A higher standard has been found, for example, where a statute stated a policy that the state "is to ensure every child a fair and full opportunity to reach his full potential," <u>Burke County Bd. of Educ. v. Denton</u>, 895 F.2d 973, 983 (4th Cir. 1990), and where a statute provided that an IEP be "designed to develop the maximum potential" of the handicapped child. <u>Dong *ex rel*. Dong v. Board of Educ.</u>, 197 F.3d 793, 798-99 (6th Cir. 1999).

The Court is not convinced that the 1998 Florida Constitutional amendment, the existence of a gifted child program, or the "No Child Left Behind Act" indicate that Florida intended to override the federal IDEA standard. <u>Bush v. Holmes</u>, 919 So. 2d 392, 402-05 (Fla. 2006) traced the history of the Florida educational articles in the various State constitutions. Given the

9

well-established nature of the federal standard, an intent to impose an enhanced requirement for IDEA purposes would have been more clearly stated. Plaintiff has not cited any case, nor has the Court found one, which held there is a requirement in Florida that education must be maximized in the IDEA context. <u>Holmes</u> does not discuss the IDEA, and specifically cautions that its decision concerning the opportunity scholarship program would not necessarily affect other programs, such as those for exceptional students. 919 So. 2d at 412. Indeed, a recent Florida appellate decision continues to apply the <u>Rowley</u> standard, including prior Florida precedent that "there is no requirement to maximize each child's potential." <u>M.H. v. Nassau County Sch. Bd.</u>, 918 So. 2d 316, 318 n.1 (Fla. 1st DCA 2005)(citation omitted). The Report and Recommendation correctly cited Eleventh Circuit cases from Florida decided both before and after 1998 which utilized the <u>Rowley</u> standard. (Doc. #38, p. 13.) The Court concludes that the magistrate judge did not apply the wrong legal standard to determine FAPE.

### E.  Procedural Violations

As the Eleventh Circuit has noted, the procedural safeguards require "that parents be given the opportunity to contest virtually any matter concerning the provision of a" free adequate public education to a child with a disability. <u>Association For Retarded Citizens, Inc. v. Teague</u>, 830 F.2d 158, 160 (11th Cir. 1987). The

Objections contain over thirty pages of claimed procedural violations. (Doc. #42, pp. 13-45.) The Parents and Student assert that the magistrate judge failed to give due deference to the findings of procedural defects by the ALJ, ignored competent evidence in support of the ALJ's decision, and improperly substituted her judgment for that of the ALJ, who had the opportunity to assess the credibility of such witnesses. (Doc. #42, pp. 13-15.) Nineteen specific claimed procedural violations are set forth. (Doc. #42, pp. 17-45.) The Court has carefully reviewed these claims *de novo* and agrees with the Report and Recommendation. Therefore, these objections are overruled.

### F.  Substantive Claims

The Objections assert that the School Board failed to provide the Student with an appropriate IEP, failed to place the Student in the least restrictive environment, and failed to provide necessary services. (Doc. #42, pp. 45-52.) The Court has carefully reviewed these claims *de novo* and agrees with the Report and Recommendation. Therefore, these objections are overruled.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.  The Magistrate Judge's Report and Recommendation (Doc. #38 in Case No. 2:05-cv-5-FtM and Doc. #43 in Case No. 2:05-cv-7-FtM) is **accepted and adopted**, with the exception of the description of the School Choice program at page nine, footnote 11 and the

immediate dismissal of 2:05-cv-7.

2. The Final Order of the Administrative Law Judge is **reversed** for the reasons stated in the Report and Recommendation.

3. The Clerk shall withhold entry of judgment in favor of plaintiff School Board of Lee County as to the Amended Complaint (Doc. #7) in Case No. 2:05-cv-5-FtM; and in favor of defendant School Board of Lee County as to Counts 1, 2, and 3 of the Complaint (Doc. #1) in Case No. 2:05-cv-7-FtM.

4. The magistrate judge shall issue an additional case management and scheduling order as to the remaining counts in Case No. 2:05-cv-7-FtM.

**DONE AND ORDERED** at Fort Myers, Florida, this __27th__ day of March, 2007.

JOHN E. STEELE
United States District Judge

Copies:
Hon. Sheri Polster Chappell
Counsel of record